UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

: 
UNITED STATES OF AMERICA,  : CASE NO. 1:17-cr-00060 (Related
: Case: 1:19-cv-1313)
    Plaintiff,  :
: OPINION & ORDER
vs.  : [Resolving Doc. 100, 105]
: 
MARC A. MONTGOMERY,  :
: 
    Defendant.  :
: 

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Defendant Marc A. Montgomery moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] The Government opposes Montgomery's request.[2]

For the reasons stated below, the Court **DENIES** Defendant's motion.

The Court also **DENIES** Defendant's motion for summary judgment and motion to strike the government's response brief.

I.    Background

On November 30, 2016, Defendant Montgomery was the getaway driver after his childhood friend, Levert Bates, robbed a Garfield Heights, Ohio bank. Co-Defendant Bates pleaded guilty to the armed bank robbery.[3]

On April 11, 2017, a jury found Defendant Montgomery guilty of aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2 (Count 1), and brandishing, carrying, or using a firearm during and in relation to a crime of violence in

---

[1] Doc. 100.
[2] Doc. 104.
[3] Doc. 51 at 2.

Case No. 1:17-cr-00060
Gwin, J.

violation of 18 U.S.C. § 924(c)(1)(A) (Count 2).[4]

On August 28, 2017, this Court sentenced Montgomery to 80 months imprisonment for Count 1 to be served consecutively with 60 months imprisonment for Count 2, as well as 5 years of supervised release.[5]

## II. Discussion

### a. Defendant Montgomery's § 2255 Motion

#### i. Legal Standard

Defendant moves to vacate and set aside his conviction based on seven grounds focused on his counsel's alleged deficiencies and alleged violations of his Sixth Amendment confrontation rights and Fourteenth Amendment due process rights.[6]

A federal prisoner may collaterally attack their conviction or sentence by filing a § 2255 motion to vacate, set aside, or correct the sentence. A movant "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[7] A § 2255 movant must establish his allegations by a preponderance of the evidence.[8]

A § 2255 motion cannot be used to "to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."[9] This procedural default doctrine typically prohibits collateral attacks, such as § 2255 petitions, that raise claims the petitioner could have brought on direct

---

[4] *Id.* at 1; Doc. 1.
[5] Doc. 75.
[6] *See* Doc. 100.
[7] *Pough v. U.S.*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. U.S.*, 334 F.3d 491, 496–97 (6th Cir. 2003)).
[8] *Pough*, 442 F.3d at 964.
[9] *Jones v. U.S.*, 178 F.3d 790, 796 (6th Cir. 1999) (citation omitted).

Case No. 1:17-cr-00060
Gwin, J.

appeal.[10]  A procedurally defaulted claim "may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' . . . or that he is 'actually innocent.'"[11] Ineffective assistance of counsel claims are an exception to the procedural default doctrine.[12]

Finally, *pro se* pleadings are liberally construed and held to less stringent standards than counsel-drafted pleadings.[13]

### ii. Ground 1 – Ineffective Assistance of Counsel

Defendant Montgomery argues that he received ineffective assistance of trial counsel in violation of his constitutional rights. Montgomery says his counsel failed to properly investigate his case, did not call Montgomery's co-defendant as a witness, failed to object in certain instances at trial, and did not conduct himself properly during trial.[14]

To establish ineffective assistance of counsel, Montgomery must meet the *Strickland* standard: He must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficiency.[15]

On the first prong, Counsel's performance must fall "below an objective standard of reasonableness."[16]  A court assesses counsel's performance under a highly deferential standard.[17]  In other words, courts presume a "wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

---

[10] *Weinberger v. U.S.*, 268 F.3d 346, 351 (6th Cir. 2001) (citation omitted); *Bousley v. U.S.*, 523 U.S. 614, 621–24 (1998).
[11] *Bousley, 523 U.S.* at 622 (citing *Murray v. Carrier,* 477 U.S. 478, 485, 496 (1986)).
[12] *Massaro v. U.S.*, 538 U.S. 500, 504 (2003).
[13] *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).
[14] Doc. 100 at 2–4; Doc. 109 at 3–8. The Court notes that Defendant's § 2255 motion lacks pages 4 and 5. Defendant's arguments appear to be reiterated in his reply to the Government's response, however.
[15] *Strickland v. Washington,* 466 U.S. 668, 687 (1984).
[16] *Id.* at 688.
[17] *Id.* at 689.

Case No. 1:17-cr-00060
Gwin, J.

circumstances, the challenged action might be considered sound trial strategy."[18]

Likewise, under the second prong, a Defendant must demonstrate that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[19]

Defendant raises numerous purported deficiencies, but they do not satisfy *Strickland*'s requirements.

First, Defendant Montgomery states that his counsel failed to get surveillance video to show that Defendant traveled to a nearby Sunoco station while his co-defendant robbed the bank.[20] Defendant's conclusory statements do not demonstrate that the video existed. In fact, at trial, Defendant's counsel represented that, "unfortunately Sunoco didn't have the evidence that we need."[21]

Defendant Montgomery also has not shown how any video evidence of Montgomery at the convenience store during the robbery would have changed the outcome of his case. Defendant argues that, with the video, he would have been convicted as an "accessory after the fact" instead of as an aider and abettor to the robbery.[22]

But Montgomery's conviction did not rely on his presence at the robbery or waiting in the getaway car during the robbery. On direct appeal, the Sixth Circuit ruled that there was sufficient evidence—regardless of whether or not Montgomery went to the Sunoco station while Bates was in the bank—to convict Montgomery of aiding and abetting the

---

[18] *Id.* (citation omitted).
[19] *Id.* at 694.
[20] Doc. 100 at 2–3.
[21] Doc. 88 at 11.
[22] Doc. 100 at 3.

-4-

Case No. 1:17-cr-00060
Gwin, J.

robbery.[23] Even if video existed that showed Defendant at the Sunoco station, the Sixth Circuit found the video evidence was insufficient to undercut Defendant's conviction.

Second, Defendant claims that his counsel was deficient because he did not call Montgomery's co-defendant, Levert Bates, to testify.[24] Defendant Montgomery states that Bates's "testimony would have been exculpatory" and "could have rebutted the state[']s case at trial."[25] Defendant does not say, however, how Bates's testimony would have been useful and does not provide evidence that Bates would have spoken in Montgomery's favor.

The Court finds that Montgomery's counsel's decision to proceed without calling Bates falls within the wide latitude provided counsel to make strategic decisions on behalf of their client under *Strickland*.[26] Montgomery's concern that Bates was not transported to the courthouse for the first trial day does not mean that Montgomery was denied the chance to present a witness.[27] Defense counsel included Bates on their witness list,[28] and even raised that marshals had failed to bring Bates to the trial in a sidebar discussion with the Court.[29] Bates could have been brought to the courthouse the next day instead.[30] But Defense counsel said they "made the decision" to not call Bates.[31] Defense counsel announced his decision to forego calling Bates while in court and with Petitioner

---

[23] Doc. 93 at 4–7.
[24] Doc. 100 at 3.
[25] *Id.*
[26] *Strickland,* 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). *See also Davis v. Lafler*, 658 F.3d 525, 537–38 (6th Cir. 2011); *Hughes v. U.S.*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.").
[27] Doc. 100 at 3.
[28] Doc. 31.
[29] Doc. 90 at 121–22.
[30] *Id.*
[31] Doc. 103 at 2.

Case No. 1:17-cr-00060
Gwin, J.

Montgomery present. Faced with obvious risk regarding what co-defendant Bates would say,[32] it was reasonable for counsel to decide against calling Bates.

Third, Defendant argues that his counsel failed to properly object to or "suppress" hearsay evidence at trial.[33] At trial, the Court specifically questioned defense counsel when he did not object to Police Sergeant Cramer's testimony describing the robbery suspects' description. Police Sergeant Cramer received a report that included suspects' descriptions and location on the day of the robbery. Repeating the report information in court raised hearsay concerns.[34]

Later in Cramer's testimony, Defendant's counsel explained to the Court that he had not objected because "we're not contesting Mr. Montgomery and Mr. Bates were the two individuals."[35]

Defendant Montgomery does not show how he was prejudiced by his counsel's failure to object. He does not show that an objection would have changed the outcome of his case. Montgomery's counsel was clear that he did not want to contest or object to evidence placing Montgomery and Bates at the robbery.[36]

The Sixth Circuit has recognized that "[l]earned counsel . . . use objections in a tactical manner."[37] Objecting in every potential instance could do more harm than good and distract

---

[32] The Court notes that at least one of Bates's statements, referenced in Montgomery's sealed presentence report, sheds some doubt on the claim that Bates would have provided exculpatory testimony. Doc. 68 at 4.
[33] Doc. 100 at 3; Doc. 109 at 4–5.
[34] Doc. 90 at 7–9.
[35] *Id.* at 31.
[36] *Id.*
[37] *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006) ("Any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.").

Case No. 1:17-cr-00060
Gwin, J.

from counsel's main objectives. Montgomery's counsel diligently cross-examined witnesses and made Defendant's case.[38] Defense counsel's failure to object in certain instances were strategic and were not errors demonstrating ineffective assistance of counsel.

Finally, Defendant Montgomery also argues that his counsel was ineffective because he "failed to put forward a defense theory" and because his conduct was "unbecoming of a trial lawyer."[39] Defendant believes that he would have been convicted as an "accessory after the fact" if his counsel had prepared differently or acted differently at his trial.[40] Defendant claims his counsel "relied only on the government files to build his defense" and did not adequately seek surveillance footage from Sunoco.[41]

These arguments do not persuade the Court that Montgomery's counsel was ineffective. Defendant was not charged with the separate accessory after the fact crime, and he does not provide evidence to support his claims. The record indicates that counsel's actions were strategic and reasonable.

### iii. Ground 2 – Defendant Bates Interview Reference

Montgomery asserts that the Government violated his Sixth Amendment confrontation and Fourteenth Amendment due process rights when it admitted into evidence some of co-defendant Bates's "extrajudicial" interview.[42] Defendant argues that admitting part of Bates's interview during FBI Agent Earl's examination, when Bates was not called to testify, violated his confrontation right, as well as his rights to a defense and fair trial.[43]

---

[38] *See, e.g.*, Doc. 90 at 24–29, 46–48, 64–65, 79–81, 89, 103–04, 119–20, 153–69; Doc. 102 at 11–19.
[39] Doc. 109 at 6–7.
[40] *Id.* at 6.
[41] *Id.*
[42] Doc. 100 at 5.
[43] *Id.*

Case No. 1:17-cr-00060
Gwin, J.

But the government did not admit any part of Bates's interview. Defendant references a line of questioning that the Court cutoff to avoid a potential confrontation issue.[44] Defendant's counsel also cross-examined FBI Agent Earl on the Bates interview issue to protect Montgomery's rights.[45]

Defendant Montgomery has not shown that his rights were violated because of this particular questioning.

### iv. Ground 3 – Decision to Not Call Defendant Bates to Testify

Defendant Montgomery argues that his Sixth and Fourteenth Amendment rights were violated when Defendant Bates was not transported to testify on April 10, 2017.[46] Bates could have testified the next day, but Defendant Montgomery's counsel chose not to call Bates.[47] Defendant Montgomery believes that the trial should have been stopped until Bates could testify.[48]

Defendant Montgomery states that Bates was the "only one who could corroborate

---

[44] *Id.*; Doc. 90 at 149–50. Defendant Bates's interview was not admitted into evidence:
> Q [The Government]: You had conducted an interview of Mr. Bates prior to this?
> A [FBI Agent Earl]: That's correct.
> Q: Did that evidence and investigation support the statements regarding the location [of the getaway car]?
> The Court: No, no –
> A: That's correct.
> The Court: – no.
> Q: Is it –
> The Court: No, no. You –
> Ms. Miller [The Government]: May I ask about the technique, Your Honor?
> The Court: You can't ask him if Bates made some statement.
> Ms. Miller: Certainly I don't want to elicit that testimony, Your Honor.
> The Court: Well, isn't that what you just asked?
> Ms. Miller: I would like to elicit the testimony about his training and experience in interview and investigation techniques.

*Id.* at 150.
[45] Doc. 90 at 160–62.
[46] Doc. 100 at 7–10.
[47] Doc. 90 at 121–22; Doc. 103; Doc. 104 at 14.
[48] Doc. 100 at 8–9.

-8-

Case No. 1:17-cr-00060
Gwin, J.

what this movant's [alleged] role in the robbery was."[49] In his reply to the Government's response, Montgomery says, without providing evidence, that Bates's testimony would have "show[ed] that [Montgomery] had no prior knowledge of Bates's plan to rob" the bank and that they did not have a "conversation on the way to the bank" about Bates's plan.[50]

Reading Montgomery's § 2255 brief liberally, his argument appears to be that the Government purposefully failed to transport Bates to the courthouse on the first day of trial, which led defense counsel to decide to not call Bates at all, effectively and intentionally denying him his constitutional right to call Bates.[51] This argument does not persuade.

Unlike Montgomery's *Bennett v. Scroggy* citation, the record shows that defense counsel could have called Bates to testify the next day but chose not to do so. Montgomery was not denied the chance to put forward a full defense.

### v. Ground 4 – Prosecutorial Misconduct

Next, Defendant Montgomery argues that the Government violated his constitutional rights by "eliciting damaging inferential hearsay testimony" during FBI Agent Earl's examination and committing "prosecutorial misconduct during closing argument."[52] This argument partially repeats Montgomery's argument from Ground 2.

Montgomery also alleges that the Government's prosecutor went beyond the appropriate scope of his closing argument rebuttal. Montgomery says the prosecutor "urge[d] the jury to consider [Montgomery's] bad character as a thumb on the scale in favor of finding guilt."[53]

---

[49] *Id.* at 8.
[50] Doc. 109 at 12.
[51] *Id.* at 11–12; Doc. 100 at 9 (citing *Bennett v. Scroggy,* 793 F.2d 772, 775 (6th Cir. 1985)).
[52] Doc. 100 at 11.
[53] *Id.* at 12.

Case No. 1:17-cr-00060
Gwin, J.

The Government responds that this argument is procedurally defaulted because Montgomery failed to make it on direct appeal. The Government alternatively argues that, even if it were not procedurally defaulted, the prosecutor did not discuss Montgomery's character at closing.[54]

The Court agrees that Defendant's argument is procedurally defaulted. Montgomery did not raise a prosecutorial misconduct issue on direct appeal.[55]

Even if he had raised the issue, the Court is not convinced by Defendant Montgomery's claim. "To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process."[56]

Courts in the Sixth Circuit apply a two-step analysis to determine whether a prosecutor's remarks or actions violated a defendant's constitutional rights. First, the court must decide whether the prosecutor's statements or actions were improper. Second, if the court finds impropriety, it applies a four-factor test to determine if the prosecutor's conduct was "flagrantly" improper such that it violated the defendant's due process rights. Courts consider four factors: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong."[57]

---

[54] Doc. 104 at 15–16.
[55] Doc. 93 at 4.
[56] *Anderson v. U.S.*, 246 F. Supp. 2d 758, 760 (E.D. Mich. 2003) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).
[57] *Anderson*, 246 F. Supp. 2d at 760–61 (citing *Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir. 2002) and *United States v. Carroll,* 26 F.3d 1380, 1385 (6th Cir. 1994)).

Case No. 1:17-cr-00060
Gwin, J.

Here, there is little to suggest that the prosecutor's actions were improper. As discussed above, the Court stopped the Government from eliciting hearsay testimony during FBI Agent Earl's examination. As for the Government's closing argument and rebuttal closing, neither demean Montgomery's character.[58] Moreover, the Court stopped the prosecutor from going beyond the scope of defense counsel's closing argument.[59]

Even if Defendant had met the first prong of the two-part standard, he does not meet the second. Considering the four factors, the prosecutor's comments were not misleading.[60] Further, the strength of the other evidence against Defendant, the Court's efforts to limit the government's rebuttal scope, and the isolated nature of the prosecutor's comments within the context of the entire trial counter Defendant's claims of a constitutional violation.

Defendant Montgomery's constitutional rights were not violated by prosecutorial misconduct.

### vi. Ground 5 – Judicial Bias

For his fifth ground, Defendant Montgomery alleges that his constitutional rights were violated by judicial bias.[61] Specifically, Montgomery again asserts that the Court admitted hearsay evidence and did not permit him to call to Bates as a witness. Defendant Montgomery also argues that the Court violated his confrontation right when, at Montgomery's sentencing hearing, it "relied on an [alleged] statement that Bates made in his" presentence report.[62]

---

[58] *See* Doc. 102.
[59] *Id.* at 21–22.
[60] *Id.*
[61] Doc. 100 at 13–14.
[62] *Id.* at 13 (citing Doc. 88 at 11–13).

-11-

Case No. 1:17-cr-00060
Gwin, J.

As before, Montgomery did not raise these issues on direct appeal. They are procedurally defaulted. Even if these issues were not procedurally defaulted, Defendant's first two examples are instances where the Court made an extra effort to ensure Defendant's due process and confrontation rights, not violate them.

Montgomery's claims about the evidence the Court considered at his sentencing also fail. The rules of evidence and confrontation clause concerns do not apply at a sentencing hearing. "[E]videntiary inclusiveness is the order of the day at sentencing, a frame of reference as likely to facilitate leniency as to impede it."[63]

### vii. Ground 6 – The Supreme Court's *U.S. v. Davis* Decision

Defendant Montgomery claims that the Supreme Court's recent decision in *U.S. v. Davis* applies to his case and merits vacating his conviction for brandishing, carrying, or using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).[64]

In *Davis*, the Supreme Court held that the definition of a "crime of violence" under 18 U.S.C. § 924(c)(3)(B)'s "residual clause" was unconstitutionally vague.[65] But, the Sixth Circuit has held that federal bank robbery falls under the "elements definition," not the residual clause, of 18 U.S.C. § 924(c)(3)(A).[66] Montgomery's § 924 conviction was properly predicated on his aiding and abetting a bank robbery conviction.[67]

---

[63] *U.S. v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) ("But evidentiary inclusiveness is the order of the day at sentencing, a frame of reference as likely to facilitate leniency as to impede it. The key question is reliability. Sentencing hearings may include evidence otherwise inadmissible at trial so long as the evidence is reliable. . . . That is why the Rules of Evidence do not apply at sentencing hearings. . . . That is why the Confrontation Clause does not apply at sentencing.").
[64] Doc. 100 at 14.
[65] *U.S. v. Davis*, 139 S. Ct. 2319, 2323–24 (2019).
[66] *U.S. v. Jackson*, 918 F. 3d 467, 486 (6th Cir. 2019).
[67] *See* 18 U.S.C. § 2.

Case No. 1:17-cr-00060
Gwin, J.

### viii. Ground 7 – Cumulative Errors

Finally, Defendant Montgomery claims that his § 2255 petition should be granted because the alleged errors detailed throughout his petition cumulatively prejudiced him and deprived him of his constitutional rights to a fair trial.[68]

A cumulative error analysis requires a defendant to show "that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."[69] As the Government highlights, however, "the accumulation of non-errors cannot collectively amount to a violation of due process."[70] Defendant has not shown any errors.

### b. Defendant's Motion to Strike

Defendant also filed a "motion for summary judgment and estoppel of the Government's brief as time barred."[71] In essence, Defendant Montgomery argues that the Court should strike the Government's response brief to his § 2255 motion because the Government filed its brief late.[72]

In July 2019, the Court required Defendant to file a local-rule-compliant § 2255 brief and instructed the Government that any response brief must be filed within 30 days of Defendant's filing.[73]

Petitioner-Defendant filed his new brief via mail on July 26, 2019.[74] Defendant Montgomery claims the Government filed its response on September 9, 2019.[75] The Government's response was actually filed on August 23, 2019, within the 30-day window

---

[68] Doc. 100 at 16.
[69] *U.S. v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004).
[70] *Campbell v. U.S.*, 364 F.3d 727, 736 (6th Cir. 2004) (citation omitted).
[71] Doc. 105.
[72] *Id.* at 3.
[73] Doc. 98.
[74] Doc. 100 at 1.
[75] Doc. 105 at 3.

-13-

Case No. 1:17-cr-00060
Gwin, J.

given by the Court.[76]

Defendant's motion is denied.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

The Court also **DENIES** Defendant's motion for summary judgment and motion to strike the government's response brief.

IT IS SO ORDERED.

Dated:  February 26, 2020               *s/      James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE

---

[76] Doc. 104 at 21.